## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| CBOSS, INC.<br>7332 Southern Boulevard<br>Boardman, Ohio 44512,<br><br>   Plaintiff,<br><br> vs.<br><br>RALPH R. ZERBONIA<br>3346 Olde Winter Trail<br>Poland, Ohio 44514,<br><br>and<br><br>UNIVERSE CENTRAL CORPORATION<br>c/o Its Statutory Agent<br>Matthew C. Giannini<br>1040 South Commons Place, Suite 200<br>Youngstown, Ohio  33514,<br><br>   Defendants. | CASE NO.<br><br>JUDGE<br><br><br><br><br>**Complaint for declaratory judgment with reserved jurisdiction to enforce by injunction** |

For its complaint against defendants Ralph R. Zerbonia and Universe Central Corporation (collectively, the "Defendants"), plaintiff Cboss, Inc. states:

## Parties

1. Plaintiff Cboss, Inc. is an Ohio corporation with it principal place of business in Boardman, Ohio, in Mahoning County.

2. Defendant Ralph R. Zerbonia is an individual who resides in Youngstown, Ohio, in Mahoning County.

3. Defendant Universe Central Corporation is an Ohio corporation with a principal place of business in New Middletown, Ohio, in Mahoning County.

4. Zerbonia is the President and sole owner of Universe Central.

## Jurisdiction And Venue

5. The Court has federal question jurisdiction over Cboss's claims under 28 U.S.C. § 1331 because the claims arise under federal law.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) because defendants Zerbonia and Universe Central reside in the Northern District of Ohio.

## Factual context

**What Cboss does, and its past relationship with defendants Universe Central and Zerbonia**

7. Cboss creates custom computer software applications, which it licenses or sells to government agencies and private firms in Ohio and throughout the country. It also operates, services, provides technical support for, and updates software applications

for its clients.  For example, Cboss created the computer software application that enables Ohioans to register their motor vehicle with the Ohio Bureau of Motor Vehicles online.  Cboss also provides web hosting services to customers, the crux of which is that Cboss operates what it calls a network operating center using its equipment and software to house clients' websites and software applications so that others can access them via the internet.  "Cboss" is an acronym for community-based online systems and services.

8. Cboss, Inc. was incorporated in 1996, and retained defendant Zerbonia through defendant Universe Central to manage the company.

9. Immediately before joining Cboss, Zerbonia was an investigator for the Ohio Auditor's office.

10. Through Universe Central, Zerbonia served as General Manager of Cboss from its inception in 1996 until November, 2006, when Cboss terminated its contract with Universe Central and thus terminated Zerbonia's services and agency relationship with Cboss.

11. During the final three years of Zerbonia's tenure with Cboss, the firm had about 27 employees.  Cboss also employed other individuals as independent contractors who generally worked 40-hour weeks.

12. Thirteen of the Cboss employees and 11 independent contractors worked in "production."  They specialized in designing, writing, developing, and servicing the software that Cboss created.  Five of the Cboss employees and at least one of the independent contractors worked in "network and system administration and technical

support." They managed the Cboss network operating center and Cboss' internal computer network and system infrastructure. Two of the employees held clerical positions. The remaining seven employees and Zerbonia were in sales, customer support, and administrative positions.

**Cboss develops a software application called COIN, and hires John Conley to assist in selling software services to government agencies**

13. During 2003 and 2004, the Ohio Lottery Commission and the Ohio Attorney General's office retained Cboss to develop software to assist those agencies in executing their duties to regulate and license lawful gambling operated by charities in Ohio, such as bingo.

14. The software application is named COIN, which stands for Charitable Organization Information Network.

15. Both the Lottery Commission and the Attorney General's office use COIN. The Lottery Commission uses it to register bingo operators and to receive fees from the registrants. The Attorney General's office uses it to:

> a. license charities or other non-profit organizations eligible to operate lawful gambling and to receive fees from those registrants;
>
> b. license professional solicitors (fund-raisers) and to receive fees from those registrants;
>
> c. license distributors of tickets and other game pieces used in lawful gambling;
>
> d. enable members of the public to report complaints about lawful gambling operations;

4

    e.  manage internal investigators' and attorneys' follow-up on cases that the Attorney General's office opened based on complaints.

16. Zerbonia was not a creator, architect, builder, or designer of COIN. Zerbonia did not plan or supply any technical design or technical component of COIN. Zerbonia did not supply any of the technical expertise that Cboss incorporated into the operation or functionality of COIN. Zerbonia did not instruct the Cboss technical personnel how to write or edit any source code used in COIN.

17. In August, 2004, John Conley entered into a personal services contract with Cboss, and became an employee of Cboss. He functioned as a sales representative with the title of Government Development Director. Immediately before joining Cboss, Conley was a lobbyist in Columbus, Ohio. As Cboss' Government Development Director, Conley remained in Columbus.

18. Conley performed no services of any nature in developing COIN.

**Cboss develops Charity Trax**

19. In late 2005, an official of the state of Tennessee expressed interest in Cboss exploring whether Cboss could create software for that state's licensing and regulating of charitable gambling and the soliciting of funds.

20. Cboss had not acquired a contract with Tennessee, but began to develop a core software application based on COIN's functions that Cboss could customize for Tennessee or to agencies of other states that regulate and license lawful gambling

5

sponsored by charities and other non-profit organizations.  Cboss named that software application Charity Trax.

21. Neither Zerbonia nor Conley was a creator, architect, builder, or designer of Charity Trax.  Neither Zerbonia nor Conley planned or supplied any technical design or technical component of Charity Trax.  Neither Zerbonia nor Conley supplied any of the technical expertise that Cboss incorporated into the operation or functionality of Charity Trax.  Neither Zerbonia nor Conley instructed the Cboss technical personnel how to write or edit any source code used in Charity Trax.

22. Also, neither Zerbonia nor Conley was a creator, architect, builder, or designer of any other software application developed by Cboss.  Neither Zerbonia nor Conley planned or supplied any technical design or technical component of any software application developed by Cboss.  Neither Zerbonia nor Conley supplied any of the technical expertise that Cboss incorporated into the operation or functionality of any software application developed by Cboss.  Neither Zerbonia nor Conley instructed the Cboss technical personnel how to write or edit any source code used in any software application that Cboss developed.

**Tennessee issues its 1st request for proposals to develop software for licensing and regulating charitable gambling**

23. In November, 2006, Cboss terminated its contract with Universe Central and thus ended its agency relationship with Zerbonia.

24.     About six months later, in April, 2007, Tennessee issued a Request for Proposals (RFP) to develop software to replace its existing system for licensing and regulating charitable gambling and professional solicitors of funds for charities and nonprofit organizations.

25.     In early May, 2007, Cboss responded to Tennessee's RFP by proposing that Cboss use Charity Trax as a base, and customize it to meet Tennessee's specialized needs.  Cboss was the only respondent.

26.     A few weeks later, Tennessee cancelled its RFP, specifying reasons why the Cboss proposal was not sufficiently responsive to the formal requirements of the RFP.

27.     Tennessee announced that it would issue a second RFP, and invited Cboss to respond to it.

**Cboss terminates Conley's employment; Tennessee issues its 2nd request for proposals; Conley joins The James Group**

28.     In early July, 2007, Cboss terminated its contract with Conley, and thus his employment.

29.     On July 27, 2007, Tennessee issued its second RFP.

30.     In August, 2007, Conley joined The James Group, LLC, a Columbus, Ohio-area software development firm as Business Development Director.

31.     In late August, Cboss responded to Tennessee's second RFP.  Cboss provided the only responsive proposal.

7

32. In mid-September, 2007, Tennessee cancelled its second RFP, saying that Cboss "was judged to be the apparent winner; however your cost proposal was evaluated and it was determined that the price was higher than we can reasonably afford."

33. Tennessee announced that it would issue a third RFP, and invited Cboss to respond to it, but advised in substance that Cboss would have to lower its price.

**Tennessee issues its 3rd request for proposals**

34. On February 1, 2008, Tennessee issued its 3rd RFP.

35. A substantial component of Tennessee's request required each proposer to establish in writing its qualifications and experience to undertake the development of the specialized software sought by Tennessee.

36. On March 3, 2008, The James Group responded to Tennessee's 3rd RFP with a proposal.

37. The James Group's introductory letter to Tennessee advised that James Group had designated John Conley to receive Tennessee's questions about the proposal and to answer any questions about pricing.

38. The James Group's proposal listed Zerbonia as The James Group's Overall Project Coordinator for the Tennessee project.

39. On March 4, 2008, Cboss submitted its proposal, lowering its price.

40. On March 25, 2008, Tennessee announced that James Group was "the apparent best evaluated proposer."

**Representations in The James Group's proposal about the roles of Zerbonia and Conley in developing the software that Cboss developed**

41. The James Group's proposal to Tennessee included false and misleading representations about Zerbonia's and Conley's roles in developing software applications that Cboss developed. Those misrepresentations literally, in substance, and implicitly credited Zerbonia and Conley with the technical know-how underlying Cboss' design and development of software applications to assist state agencies in licensing and regulating charitable gaming and the soliciting of funds. The James Group proposal said:

   a. Mr. Ralph Zerbonia and Mr. John Conley (both) formerly of CBOSS Inc. were responsible for the development of the State of Ohio's Atty General's Charitable Regulatory and Gaming System known as COIN.

   b. Zerbonia was the author of a Charitable Gaming system [that] when it was complete was the most comprehensive system ever developed for the regulation of charities by state regulators.

   c. Overall project coordination is accomplished by Ralph Zerbonia, an experienced Charitable Regulation system designer.

   d. Individuals on James Group's team have architected other systems including Ohio's Charitable Regulator system.

9

   e.  The James Group team brings several years of experience in creating charitable regulation systems, including those which regulate charitable gaming and other non-profit entities.

(Excerpts of The James Group's proposal are attached as **Exhibit 1**.)

**More recent developments**

  42. Zerbonia, through Universe Central, has established a website on which Zerbonia and Universe Central propagate false and misleading representations that are substantially similar to those described in the preceding paragraph of this Complaint.

  43. In January, 2009, a state agency outside of Ohio issued a request for proposals to develop software for that state's licensing and regulation of charitable gambling and professional solicitation of funds, objectives similar to those of Charity Trax and COIN. Cboss intends to respond to that RFP. Upon information and belief, Zerbonia and Universe Central also intend to respond to that RFP, on their own behalf or as agents for another company.

  44. In late December, 2008, a different state agency issued a request for proposals for a contract to continue to refine, service, and support deployed software that Cboss created. Cboss intends to respond to that RFP. Upon information and belief, Zerbonia and Universe Central also intend to respond to that RFP, on their own behalf or as agents for another company.

  45. Upon information and belief, other agencies or private parties may seek proposals to develop or service software applications whose objectives are the same as or

10

similar to those of software applications that Cboss developed when Zerbonia worked for Cboss.  Cboss expects that it would respond to such RFPs.

## Count One

*False Advertising or Promotion Under The Lanham Act, 15 U.S.C. § 1125(a)(1)(B)*
(Against Zerbonia and Universe Central based on Universe Central website)

46. Cboss incorporates by reference all averments in all preceding paragraphs of this Complaint as if fully rewritten herein.

47. The misrepresentations on the website falsely and misleadingly credit Zerbonia with the technical know-how underlying Cboss' design and development of software applications to assist state agencies in licensing and regulating charitable gaming and the soliciting of funds.  The website address is www.universecentral.com.

48. As of January 20, 2009, the Universe Central website says:

   a. Ralph R. Zerbonia may well be the world's leading expert on Charity Regulatory Software Systems!   Well, he has built two, but there are only a few in existence at the level he has built, so he may be responsible for over half of all modern system [referring to Cboss' COIN and the software application for which Tennessee contracted].

   b. In 2005, the State of Ohio contracted with Zerbonia to build the state a new information system for regulating charities [referring to Cboss' COIN].  Zerbonia was System Architect and Project Manager for that system.

   c. Zerbonia was Project Manager for Ohio's computer-aided regulatory system for charity regulation [referring to Cboss' COIN].

11

49. The website also includes a slide show that falsely and misleadingly compares Cboss' COIN with the software application that Tennessee received, with Zerbonia crediting himself with figuring out how to leverage his knowledge about "building" COIN, and about other software, to "build" software for regulating charities, thus saving Tennessee $1.4 million in expense and 18 months of development time. (Copies of excerpts from Universe Central's website are attached as **Exhibit 2**.)

50. As President of Universe Central, Zerbonia drafted, assisted in drafting, provided the false and misleading information for, approved, or ratified the misrepresentations contained on Universe Central's website.

51. The misrepresentations on Universe Central's website are commercial speech and "commercial advertising or promotion" under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

52. By publishing the misrepresentations on the website, Universe Central and Zerbonia placed them in interstate commerce.

53. Those false and misleading misrepresentations are material and would tend to deceive actual or potential buyers of software development and maintenance services about the qualifications and experience of Zerbonia and Universe Central in developing software.

54. Universe Central and Zerbonia have made and continue to make those misrepresentations willfully and in bad faith knowing or expecting they would be

12

material to actual or potential buyers of custom software development and services and would likely deceive those customers.

55. If allowed to continue in commercial advertising or promotional contexts, Zerbonia's and Universe Central's misrepresentations likely will injure Cboss by diverting sales away from Cboss, by lessening the goodwill and perceived expertise and experience associated with Cboss, or by misappropriating the trade value of Cboss' expertise and experience by falsely representing that it effectively resides in Zerbonia.

## Count Two

*False Advertising Under The Lanham Act, 15 U.S.C. § 1125(a)(1)(B)*
(Against Zerbonia and Universe Central based on The James Group's proposal to Tennessee)

56. Cboss incorporates by reference all of the averments made in all preceding paragraphs of this Complaint as if fully rewritten herein.

57. As described in this Complaint, The James Group's proposal to Tennessee included false and misleading representations of fact and descriptions of fact about the role of Zerbonia in Cboss' development of COIN and Charity Trax, falsely portraying him as the *de facto* creator, author, architect, builder, and designer of those software applications developed by Cboss.  It contains a similar misrepresentation about Conley.

58. Zerbonia and Universe Central drafted, provided the false or misleading information for, approved, or ratified the misrepresentations in The James Group's proposal to Tennessee.

59. Zerbonia and Universe Central did so willfully and in bad faith knowing or expecting that they would be material to the Tennessee officials evaluating the qualifications and experience components of the competing proposals of The James Group and Cboss, and therefore would likely deceive those officials into thinking that, by acquiring the services of Zerbonia and Conley, The James Group had effectively acquired the expertise and experience underlying COIN and Charity Trax.

60. The proposal was commercial speech, and "commercial advertising and promotion" under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

61. By making the misrepresentations in its proposal to Tennessee, The James Group placed them in interstate commerce with the knowledge and approval of Zerbonia and Universe Central.

62. If, in existing or future commercial advertising or promotional contexts, Zerbonia and Universe Central continue to make the same or substantially similar misrepresentations as those that they included or sanctioned in The James Group's proposal to Tennessee, their misrepresentations are likely to injure Cboss by diverting sales away from Cboss, by lessening the goodwill and perceived expertise and experience associated with Cboss, or by misappropriating to Zerbonia or whichever company he represents the trade value of Cboss' expertise and experience.

63. Therefore, this Court should issue a judgment declaring that, in the context of commercial speech and "commercial advertising and promotion" the following representations are false or misleading:

      a.      Zerbonia was the creator, architect, author, builder, designer (or words of substantially similar import) of COIN, Charity Trax, or a software application used by the State of Ohio to assist in licensing and regulating charities, charitable gaming, or charitable solicitations of funds.

      b.      Implying or stating in substance that Zerbonia planned or supplied any technical design or technical component, or supplied the technical expertise in developing any of the technical components used in COIN, Charity Trax, or the software application used by the State of Ohio to assist in regulating charities, charitable gaming, or charitable solicitation of funds.

      c.      Zerbonia was the creator, architect, author, builder, designer (or words of substantially similar import) of any other software application that Cboss has developed.

      d.      Implying or stating in substance that Zerbonia planned or supplied any technical design or component, or supplied the technical expertise for any of the technical components used in any software application that Cboss has developed.

### **Prayer For Relief**

WHEREFORE, Cboss respectfully prays that this Court:

1.      As to both counts: issue a declaratory judgment as described and prayed for in the preceding paragraph of this Complaint.

2.      As to all counts: include a term in the final declaratory judgment that retains jurisdiction for a period of five years from the date that judgment is entered to convene a hearing, upon motion, for the purpose of enjoining the Defendants if they do not abide by the Court's declaratory judgment, and without prejudice to Cboss commencing an action thereafter for an injunction to bar any defendant from making

commercial representations that are inconsistent with this Court's declaratory judgment.[1]

3. That awards attorneys' fees to plaintiff Cboss, Inc. to the fullest extent allowed by law or under any contract between Cboss, Inc. and any defendant.

                                             s/ David L. Marburger
                                             David L. Marburger (0025747)
                                             Matthew J. Cavanagh (0079522)
                                             BAKER & HOSTETLER LLP
                                             3200 National City Center
                                             1900 East Ninth Street
                                             Cleveland, Ohio 44114
                                             T 216.621.0200
                                             F 216.696.0740
                                             dmarburger@bakerlaw.com
                                             mcavanagh@bakerlaw.com

                                             *Counsel for Plaintiff Cboss, Inc.*

---

[1] Plaintiff would have no objection to the Court giving this case administrative closure status during the 5-year period of retained jurisdiction. E.g., Penn West Assocs., Inc. v. Cohen, 371 F.3d 118 (3d Cir. 2004). Plaintiff, however, reserves the right to move the Court to ensure that its declaratory judgment qualifies as a final, appealable order under Civil Rule 54.

16