DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CBOSS, INC., | ) | CASE NO.  4:09-CV-00168 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| RALPH R. ZERBONIA, *et al.*, | ) |  |
|  | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

Pending are the parties' cross motions for summary judgment.  The instant matter concerns Plaintiff Cboss, Inc.'s ("Cboss") allegations that Defendants Ralph R. Zerbonia ("Zerbonia") and Universe Central Corp. ("UCC") violated the Lanham Act, 15 U.S.C. § 1125, for promoting false commercial representations, *i.e.*, false advertising.  Cboss submits in its motion for summary judgment that Defendants' commercial advertising statements are literally false by necessary implication and seeks declaratory judgment stating the same.  Zerbonia and UCC argue in their motion that the advertising statements are not false but true and not material to likely influence a deceived consumer's purchasing decision or at worst, mere puffery.  The parties have fully briefed and responded to each outstanding motion for summary judgment.

After reviewing each of the parties pleadings and applicable law, the Court denies in part and grants in part the pending motions for summary judgment.

(4:09-CV-00168)

## Background

On January 23, 2009, Plaintiff Cboss, Inc. filed its Complaint against Defendants Ralph Zerbonia and Universe Central Corporation (collectively "Defendants") alleging false advertising pursuant to the Lanham Act.  Cboss is an Ohio corporation involved in the creation of computer software applications for private businesses and government agencies.  In 1996, Cboss contracted with UCC to hire Zerbonia to serve as general manager of Cboss.  Zerbonia served as general manager for approximately ten years (1996-2006) until Cboss terminated the contract with UCC and Zerbonia.  During Zerbonia's tenure as general manager of Cboss, the State of Ohio hired Cboss to create a software program to provide online administration of licensing and regulation of charitable gaming and professional fund-raisers.  The system was dubbed "COIN" (Charitable Organization Information Network).

The State of Tennessee sought a similar program in 2007.  Tennessee issued a Request for Proposals ("RFP") to which Cboss, The James Group, LLC and another firm responded.[1] Zerbonia, no longer working with Cboss, worked with The James Group on its proposal for the Tennessee contract.  The State of Tennessee awarded the contract to The James Group to construct the software program.

Cboss alleges that Defendants Zerbonia and UCC made false statements in The James Group's proposal to the State of Tennessee and on UCC's website.  Specifically, Cboss complains that "Zerbonia has falsely portrayed himself as the technical leader who made COIN

---

[1]  The State of Tennessee issued three RFPs.  Cboss was the only company to respond to the first two RFPs.  Tennessee rejected or cancelled the first RFP because of a filing mistake by Cboss.  Tennessee rejected or cancelled the second RFP because Cboss' bid price was too high.

(4:09-CV-00168)

what it is — that he supplied the technical direction to the Cboss staff in how to devise, configure, program, and produce COIN to make it work.  The uncontradicted facts show that he did not."[2]  Cboss highlights several statements from the proposal and UCC's website that Cboss claims violate the Lanham Act as false advertising.  In its Complaint and Motion for Summary Judgment, Cboss seeks declaratory judgment as the sole remedy for Defendants' alleged Lanham Act violations.

Defendants seek summary judgment in their favor on all of Cboss' claims.  Defendants maintain that none of the statements highlighted by Cboss violate the Lanham Act nor has Cboss provided sufficient evidence to substantiate such a violation.

Additionally, pursuant to the Court's Order, Cboss submitted a proposed judgment entry and Defendants responded in opposition.

The cross motions for summary judgment are ready for review as the parties have fully briefed and responded to each outstanding motion for summary judgment.

**Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion."  *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation

---

[2] ECF No. 32 at 13.

-3-

(4:09-CV-00168)

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Rule 56 requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250. Put another way, this Court must

-4-

(4:09-CV-00168)

determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

"The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991) (*citing John v. State of La. (Bd. of Tr. for State Coll. & Univ.),* 757 F.2d 698, 705 (5th Cir.1985)).  In fact, the standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation.  The fact that both parties have moved for summary judgment does not mean that the Court must rule in favor of one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.  *See Begnaud v. White,* 170 F.2d 323, 327 (6th Cir. 1948) (the fact that both parties move for summary judgment does not require the court to find that no issue of fact exists).

In the instant case, both parties seek to resolve this case through summary judgment.  The Court reviews each party's motion separately and determines whether a judgment may be entered in accordance with the standards of Rule 56.  If, however, there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the Court will render judgment.  Both motions must be denied if the Court finds that there is a genuine issue of material fact.

(4:09-CV-00168)

## **Analysis**

The crux of this case — and at issue in the cross motions for summary judgment — is whether Defendants Zerbonia and UCC violated section 43(a) of the Lanham Act that states in relevant part:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

### **A. Cboss' Motion for Summary Judgment**

Cboss seeks only declaratory judgment alleging that Defendants' statements from The James Groups' Tennessee proposal and Defendants' website are literally false or false by necessary implication under the Lanham Act. Defendants' statements from the Tennessee proposal that Cboss alleges violate the Lanham Act are as follows[3]:

---

[3] ECF Nos. 1 at 9-10 (Complaint), 32 at 12 (Cboss' Motion for Summary Judgment) & 28-3 at 2-3 & 47 (Defendants' Exhibit of the Tennessee proposal).

(4:09-CV-00168)

1)  Ralph [Zerbonia] was the author of a Charitable Gaming system when it was complete was the most comprehensive system ever developed for the regulation of charities by state regulators.

2)   Individuals on our team have architected other systems including Ohio's Charitable Regulatory system.

3)  Our team brings several years of experience in creating charitable regulation systems, including those which regulate charitable gaming and other non-profit entities.

4)  Overall project coordination is accomplished by Ralph Zerbonia, an experienced Charitable Regulation system designer.

5)  Mr. Ralph Zerbonia and Mr. John Conley (both) formerly of CBOSS Inc. were responsible for the development of the State of Ohio's Attorney General's Charitable Regulatory and Gaming System known as COIN.

The statements on Defendants' website that Cboss alleges violate the Lanham Act are as follows[4]:

1)  Ralph R. Zerbonia may well be the world's leading expert on Charity Regulatory Software Systems! Well, he has built two, but there are only a few in existence at the level he has built, so he may be responsible for over half of all modern system[s].

2)  In 2005, The State of Ohio had contracted with Mr. Zerbonia to build them a new information system for regulating charities.

3)  Ralph R. Zerbonia was also the System Architect and Project Manager for that system.

Additionally, Cboss complains of a comparison made on Defendants' website comparing the costs and completion times of the COIN project with the Tennessee project.

Cboss alleges that the statements listed above "convey an unmistakable meaning.  The substance of that meaning is that Zerbonia was the technical leader who made COIN what it is;

––––––––––––––––––––

[4]  ECF Nos. 1 at 11 & 31 at 43-45, 47.

(4:09-CV-00168)

and that he supplied the technical know-how to direct the Cboss staff in how to devise, program, configure, and produce COIN — and therefore make it work."[5]  More to the point, Cboss argues that all of these statements are literally false.

In support of its motion, Cboss submitted the "Declaration of Aaron Lego," whom Cboss has employed since June of 1998 to the present.  Cboss relies on Mr. Lego's statements to support its claim that Defendants' statements are literally false.  Cboss claims that Mr. Lego's declaration proves that Zerbonia was not involved in "the essence of 'designing,' 'authoring,' 'creating,' 'building,' 'designing,' and 'architecting' the system."[6]  Essentially, Cboss argues that according to Mr. Lego's interpretation of what it means to have "authored, created, built," etc. COIN, Defendants' statements are literally false because, as declared by Mr. Lego, Zerbonia was not involved in the "technical" aspect of COIN.

The Sixth Circuit established a five element test for plaintiffs who seek to prove liability for false advertising under the Lanham Act:

> [A] plaintiff must establish the following: 1)  the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff.

*Balance Dymnamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 689 (6th Cir. 2000) (*citing Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery*, 185 F.3d

---

[5]  ECF No. 32 at 17.

[6]  ECF No. 39 at 3 (*citing* Lego's Declaration, ECF No. 31 at 9-15).

(4:09-CV-00168)

606, 613 (6th Cir. 1999)).

A plaintiff seeking monetary damages must either show that a statement "is literally false or that it is true yet misleading or confusing," *i.e.*, actual deception. *Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 614.  Whereas, a more lenient standard applies when a plaintiff seeks injunctive relief: "[I]njunctive relief may be obtained by showing *only* that the defendant's representations about its product have a *tendency to deceive consumers* . . . ." *Id. at 618* (Emphasis added).  Although in order to satisfy this more lenient standard, a "plaintiff need not present [evidence] demonstrating actual deception, it must present evidence of some sort demonstrating that consumers were misled." *Id.*  For statements that are literally false, no evidence that consumers were misled is required for recovery of monetary damages or injunctive relief, *i.e.*, the literally false statements give rise to a presumption of actual deception.  *Id.* at 614. Further, "a Lanham Act claim must be based upon a statement of fact, not of opinion." *Id.* (citations omitted).  "Thus, the initial determination concerning whether a statement is ambiguous is a matter of law, while the determination as to whether facts exist so as to justify the statement is a question of fact." *Id.* at 615 n.2.

In opposition, Defendants Zerbonia and UCC contest Cboss' position that the statements at issue are literally false, *i.e.*, Defendants argue that these statements are ambiguous or at worst, genuine issues of material fact exist to preclude summary judgment in favor of Cboss. Therefore, as to each of the statements presented by Cboss, this Court must first determine if the statements are ambiguous, which is a question of law.  *Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 615 n.2.  If the statements are not ambiguous, then a jury

-9-

(4:09-CV-00168)

could find that the statements are either literally false or true but deceptive.  In order to proceed

to the jury, there must be sufficient facts to support Defendants' statements as true or as not

deceptive thereby disputing Plaintiff's fact position.  If disputed issues of fact exist, then the

Court cannot make a determination as to falsity or deception, but must present this issue to a jury.

*Id.*

Cboss does not seek monetary damages but only seeks declaratory relief.  The Sixth

Circuit has not directly addressed what a plaintiff must show in order to receive declaratory relief

in a false advertising claim.  Because injunctive relief is subject to a more lenient or lower

standard of proof than what is required for monetary damages, the Court will apply this more

lenient standard to the requested declaratory relief.  Accordingly, Cboss may obtain declaratory

relief "by showing only that the defendant's representations about its product have a tendency to

deceive consumers" rather than the heightened standard of showing actual deception.  *Am.*

*Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 618.

Moreover, Cboss' sole argument is that Defendants' statements are literally false and thus

demonstrate a presumption of actual deception.  Cboss does not, however, argue and then present

any sort of evidence demonstrating that consumers were misled by these statements.  *See id.*

Absent any evidence demonstrating a tendency to deceive, Cboss is not entitled to declaratory

relief concerning a statement if the Court finds the statement ambiguous or genuine issues of fact

exist as to whether the statement is true but misleading.  In other words, if a statement is

ambiguous or true but misleading, then it cannot be literally false and thus, there is no

presumption of deception.  Therefore, absent literal falsity, Cboss must introduce some sort of

(4:09-CV-00168)

evidence demonstrating that consumers were misled in order to obtain the sought after

declaratory relief, which it has not.

### The Ambiguity of the Statements

Cboss insists that the statements at issue are literally false by necessary implication and

should be considered in the overall context of the Tennessee proposal and the website.  Cboss

claims that the statements are not literally false individually, but are literally false taken together

and in the context of the entire proposal — false by necessary implication.  Defendants have

directed the Court to look at the dictionary definitions of the contested words and phrases.  The

Court agrees that the statements should be evaluated in the overall context of the entire

advertisement in which they were made to determine if the statements are false by necessary

implication.  *See e.g.*, *Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st

Cir.2000); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms.

Co.*, 290 F.3d 578, 586-87 (3d Cir.2002); *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264,

274-75 (4th Cir.2002).  In evaluating the statements at issue, the Court will follow the above

mentioned structured analysis set forth by the Sixth Circuit in *Am. Council of Certified Podiatric

Physicians & Surgeons v. Am. Bd. of Podiatric Surgery*.[7]

The first statement Cboss argues that violates the Lanham Act is as follows: "Ralph

[Zerbonia] was the author of a Charitable Gaming system when it was complete was the most

---

[7]  Because the first step in evaluating Defendants' statements concerns a matter of law, any facts set forth by Plaintiff in Mr. Lego's declaration are considered only if the Court finds that a statement is not ambiguous.  If a statement is not ambiguous, then it is a question of fact as to the falsity or truth of a statement.

(4:09-CV-00168)

comprehensive system ever developed for the regulation of charities by state regulators."[8]  This

statement appears in The James Group's Tennessee proposal in a sub-section titled "Credentials

to Deliver Services."[9]  The section title is "Technical Proposal & Evaluation Guide."[10]  Cboss

claims this statement, in conjunction with the other statements at issue, conveys "that Zerbonia

was the technical leader who made COIN" and that Zerbonia is taking "credit for the technical

expertise and know-how underlying Cboss' design and development of COIN."[11]   As such,

Cboss claims this statement and the others like it are literally false.  The Court disagrees.

Cboss claims the word "author" conveys that Zerbonia was the source of the "technical

know-how" behind the COIN program.[12]  However, taken into context, the Tennessee proposal

does not convey this idea.  The State of Tennessee solicited proposals to design and create an

entirely new software system.  The very size and nature of this complicated system virtually

prohibits its completion by any one person.  Accordingly, The James Group's proposal contains

the names of many individuals that will work on the project and what their individual role will be

in developing the software.[13]  The James Group's "Project Team" description specifically states

---

[8]  ECF No. 1 at 9.

[9]  ECF No. 31 at 38.

[10]  ECF No. 31 at 36.

[11]  ECF No. 32 at 17.

[12]  ECF No. 32 at 17.

[13]  Cboss argues that the names and resumes of other James Group employees included in
the Tennessee proposal negates any argument that Defendants' statements are not literally false.
Cboss contends that those individuals "were not the focal point of the proposal."  ECF No. 37 at
14.  However, Cboss correctly insists that the statements at issue should be considered in the

-12-

(4:09-CV-00168)

that the "technical lead is in the person of Rodney Sprague . . . who is assisted by Lance

Knepper."[14]  The very next sentence states that "[o]verall project coordination is accomplished by

Ralph Zerbonia, an experienced Charitable Regulation system designer."[15]

     The next paragraph states that The James Group has "assembled a team of specialists."[16]

Zerbonia is described as a "business analyst" while others deal with "specific hardware and

quality assurance issues."[17]  The next three paragraphs highlight, without mentioning Zerbonia,

the individuals who possess the "technical talent" for the project.[18]  While Zerbonia may not have

been the "author" of COIN's technical aspects, *e.g.*, writing computer code, as argued by Cboss,

the Court does not agree that the context in which the statement was made, *i.e.*, the entire

proposal, conveys that "Zerbonia took credit for the technical expertise and know-how

underlying . . . COIN."[19]  It is not entirely clear what aspect of COIN Zerbonia may have been the

"author"of as suggested by the statement.  Or what it means to be the "author" of a software

system that was developed by many individuals.  At worst, the statement is ambiguous or at best

---

overall context of the Tennessee proposal.  ECF No. 32 at 15.  Cboss cannot have it both ways by
claiming the Court should not consider these individuals and their resumes when determining the
overall context of the proposal and instead consider only what Cboss claims is the "focal point of
the proposal."

    [14] ECF No. 31 at 40.

    [15] ECF No. 31 at 40.

    [16] ECF No. 31 at 40.

    [17] ECF No. 31 at 40.

    [18] *See* ECF No. 31 at 40.

    [19] ECF No. 32 at 17.

-13-

(4:09-CV-00168)

it is true but misleading.

An ambiguous statement cannot be literally false.  *See Outdoor Techs., Inc. v. Vinyl Visions, LLC*, 2006 WL 2849782 at *7 (S.D. Ohio 2006) ("The well-developed standard articulated by other circuits is that a false-by-necessary-implication claim fails if the statement can reasonably be understood to convey different messages.") (citations omitted).  "Commercial claims that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false."  *United Indus. Corp. v. The Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir.1998). Because the Court finds that the statement is either ambiguous or true but misleading (cannot be literally false), Cboss must introduce some sort of evidence demonstrating that consumers were misled in order to obtain declaratory relief.

The remainder of the statements from the Tennessee proposal that Cboss claims violate the Lanham Act are similarly attenuated, ambiguous or true but misleading.  Those statements are as follows[20]:

> Individuals on our team have architected other systems including Ohio's Charitable Regulatory system.
>
> Our team brings several years of experience in creating charitable regulation systems, including those which regulate charitable gaming and other non-profit entities.
>
> Overall project coordination is accomplished by Ralph Zerbonia, an experienced Charitable Regulation system designer.
>
> Mr. Ralph Zerbonia and Mr. John Conley (both) formerly of CBOSS Inc. were responsible for the development of the State of Ohio's Attorney General's Charitable Regulatory and Gaming System known as COIN.

---

[20] ECF No. 1 at 9-10.

(4:09-CV-00168)

Cboss complains of Zerbonia's claims that he "architected COIN," had "experience in creating" COIN, is "an experienced [COIN] system designer" and was "responsible for the development of" COIN.  Cboss believes Zerbonia conveyed to the State of Tennessee, *via* these proposal statements, that he possessed the technical expertise for the COIN project.

As explained above, because the proposal clearly specifies the individuals who possess the technical talent for The James Group, the complained of statements are ambiguous or true but misleading.  For example, it is unclear what it means to "have architeched other systems," to have "experience in creating" systems, to be an "experienced . . . system designer," and to have been "responsible for the development" of a system.  The statements could mean Zerbonia has experience managing the individuals who conduct and perform the technical aspects of the project.  The statements could mean Zerbonia guided the design and development from a managerial perspective rather than a technical perspective.  The statements could mean that Zerbonia was somehow significantly involved in COIN's creation and development.  The overall context in which the statements are made, however, does not convey that Zerbonia was the "technical brains" behind the COIN system.[21]  In other words, these statements are ambiguous or they could be true but misleading, but not literally false.  Given that, Cboss must introduce some sort of evidence demonstrating that consumers were misled in order to obtain declaratory relief.

Cboss complains of Zerbonia's statements from his website[22] regarding COIN.  They are

---

[21] ECF No. 37 at 10.

[22]  In response to Plaintiff's proposed declaratory judgment, Zerbonia claims the issues with respect to the website statements, specifically statements 2 and 3, are moot.  ECF No. 49 at 10.  He claims the statements are moot because he changed the statements on his website and

(4:09-CV-00168)

as follows[23]:

> 1) Ralph R. Zerbonia may well be the world's leading expert on Charity Regulatory Software Systems! Well, he has built two, but there are only a few in existence at the level he has built, so he may be responsible for over half of all modern system[s].

> 2) In 2005, The State of Ohio had contracted with Mr Zerbonia to build them a new information system for regulating charities.

> 3) Ralph R. Zerbonia was also the System Architect and Project Manager for that system.

The first sentence from the first statement, "may well be the world's leading expert," is one of opinion and not fact and is thus not actionable under the Lanham Act. *Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 618. Whether or not Zerbonia "may well be the world's leading expert on Charity Regulatory Software Systems" is subjective, speculative and not a statement of quantifiable fact.

The statement that Zerbonia "has built two" systems is open to the same interpretation as discussed above. The statement is either ambiguous or true but misleading and Cboss must introduce some sort of evidence demonstrating that consumers were misled in order to obtain declaratory relief.

---

"covenants not to change the language back." ECF No. 49 at 10. This is insufficient to render the issue moot. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Yet, while "voluntary cessation of wrongful conduct does not automatically render a case moot, the case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir.1990) (citation and quotation marks omitted). Zerbonia has not demonstrated any such reasonable expectation.

[23] ECF Nos. 1 at 11 & 31 at 43-45, 47.

-16-

(4:09-CV-00168)

The second statement, that the State of Ohio contracted with Zerbonia is not ambiguous. This statement is a verifiable statement of fact shown by, for example, producing a contract between Zerbonia and the State of Ohio.  Zerbonia has not produced any such evidence and does not dispute the fact that the State of Ohio did not contract with him to develop COIN, but contracted with Cboss.  Because the statement is unambiguous and there are no disputed issues of fact concerning the falsity of this statement, the Court finds this statement is literally false and grants Cboss declaratory relief for this specific statement.

The final statement that Zerbonia was the "System Architect" and "Project Manager" for the COIN project is unambiguous.  This statement is a verifiable statement of fact that Zerbonia possessed these "job titles" while employed with Cboss.  Each party has represented that Zerbonia was general manager of Cboss for about ten years.  Zerbonia has not produced evidence that Cboss designated him, or that he held the titles of, System Architect or Project Manager of COIN during his tenure with Cboss.  Nor has Zerbonia disputed this claim.  Because the statement is unambiguous and there are no disputed issues of fact concerning the falsity of this statement, the Court finds this statement is literally false and grants Cboss declaratory relief for this statement.

Lastly, Cboss complains that Defendants' website contains a false comparison of the COIN and Tennessee projects.  Cboss argues that this comparison is literally false because Defendants compare "the cost and time to produce each system as if the two systems are functional equivalents."[24]   The Court does not find the comparison to be literally false.

---

[24]  ECF No. 39 at 5.

-17-

(4:09-CV-00168)

The website comparison specifically states why Defendants believe the Tennessee project's cost was lower and time to completion was shorter: the Ohio project was "Built from scratch into multiple stand-alone modules," the Tennessee project was customized and modified "for a fully integrated system," and the main reason for the cost and time savings was the use of a different system known as xRM.[25]  The comparison is not at all clear, as Cboss suggests, that Defendants portray these projects as functionally equivalent.  Rather, the comparison could be interpreted that the systems perform similar functions but are built using  different methods and that Defendants believe their method saves money and time.  At worst the comparison is true but misleading and at best it is ambiguous as to what the comparison conveys to a consumer.  Accordingly, because the comparison is either ambiguous or true but misleading, it cannot be literally false and Cboss must introduce some sort of evidence demonstrating that consumers would be misled in order to obtain declaratory relief.

Absent literal falsity, one of the key elements of a false advertising claim under the Lanham Act for declaratory relief is "that there is . . . at least a tendency to deceive a *substantial portion of the intended audience*."  *Am. Council of Certified Podiatric Physicians & Surgeons, 185 F.3d at 616* (Emphasis in original) (internal citation omitted).  With respect to the Tennessee proposal, the intended audience was "[a] Proposal Evaluation Team, made up of three or more [Tennessee] State employees."[26]  This team is most likely comprised of "a sophisticated group of professionals who presumably have familiarity with the issues involved in" selecting a qualified

---

[25]  ECF No. 31 at 48-52.

[26]  ECF No. 31 at 36.

-18-

(4:09-CV-00168)

organization to deliver the sought after software system.  *Id.* at 616.  The Court finds that this

intended audience would find the contested proposal statements to be either ambiguous or true

but misleading.  Accordingly, Cboss must introduce some sort of evidence demonstrating that

consumers would be misled in order to obtain declaratory relief.

   With respect to the website comparison, the same holds true.  Defendants are marketing

their services to similar government bodies as the State of Tennessee.  The decision makers and

evaluators of those states — the intended audience — are presumed to be made up of a similar

group of sophisticated professionals.  The Court finds that this intended audience would find the

contested website comparison to be either ambiguous or true but misleading.  Accordingly,

Cboss must introduce some sort of evidence demonstrating that consumers would be misled in

order to obtain declaratory relief.  Because Cboss has not introduced any evidence of a tendency

to deceive, it is not entitled to summary judgment on the proposal statements and website

comparison.

   In sum, the Court finds that all of Defendants' statements from the Tennessee proposal

and the website comparison are either ambiguous or true but misleading and thus, cannot be

literally false.  Given that, Cboss is not entitled to a presumption of "a tendency to deceive" for

literally false statements.  Therefore, because the statements are either ambiguous or true but

misleading and because Cboss has not presented some sort of evidence demonstrating that

consumers were misled to satisfy the lower standard of a "tendency to deceive consumers,"

Cboss is not entitled to summary judgment on the website comparison and these statements.

   Further, the Court finds that the first statement from Defendants' website, Zerbonia "may

-19-

(4:09-CV-00168)

well be the world's leading expert . . . ," is one of opinion and not fact and is thus not actionable

under the Lanham Act.  Additionally, the second part of the first statement, that Zerbonia "has

built two" systems, is either ambiguous or true but misleading.  Cboss is not entitled to summary

judgment on this statement.

Further, the Court finds the last two statements from Defendants' website, that the State

of Ohio contracted with Zerbonia and Zerbonia was the "System Architect" and "Project

Manager" for the COIN project, are literally false and grants Cboss declaratory relief for these

statements.

### B.  Defendants' Motion for Summary Judgment

The foregoing analysis and findings regarding each statement are also applicable to the

disposition of Defendants' motion for summary judgment.  At issue is whether the statements

made by Defendants Zerbonia and UCC in the Tennessee proposal and on the website violated

section 43(a) of the Lanham Act.  Defendants essentially make the same arguments in their

motion for summary judgment as they do in their opposition to Cboss' motion for summary

judgment.  Given that, the findings above apply conversely to Defendants' motion for summary

judgment.

The Sixth Circuit's established five element test for plaintiffs who seek to prove liability

for false advertising under the Lanham Act bears repeating:

> [A] plaintiff must establish the following: 1)  the defendant has made false or
> misleading statements of fact concerning his own product or another's; 2) the
> statement actually or tends to deceive a substantial portion of the intended audience;
> 3) the statement is material in that it will likely influence the deceived consumer's
> purchasing decisions; 4) the advertisements were introduced into interstate
> commerce; and 5) there is some causal link between the challenged statements and

(4:09-CV-00168)

harm to the plaintiff.

*Balance Dymnamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 689 (6th Cir. 2000) (*citing Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery*, 185 F.3d 606, 613 (6th Cir. 1999)).  Because some of the complained of statements are not literally false, Cboss must introduce some sort of evidence demonstrating that consumers were misled in order to obtain declaratory relief, which it has not.  *Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 618.  The aforementioned analysis establishes that Cboss cannot satisfy the second element of this test: evidence of a tendency to deceive.  Since there is no evidence before the Court indicating that consumers were misled by Defendants' statements, there are no genuine issues of material fact to present to a jury with which to preclude partial summary judgment in favor of Defendants.[27]  Furthermore, because Cboss cannot satisfy the second element set forth above, the Court does not need to address whether or not Cboss satisfies each of the remaining elements because the Sixth Circuit test requires the satisfaction of all five elements.

---

[27] Defendants provided an exhibit showing the scores that each of the three companies that bid on the Tennessee project received on their respective proposals from the State of Tennessee evaluators.  ECF No. 28-5.  Defendants' proposal received the lowest score in three out of four categories, but the highest score in the fourth category – cost.  Regardless, the scores do not demonstrate, one way or the other, whether the State of Tennessee was misled or that Defendants' statements had a tendency to deceive the State of Tennessee during its evaluation of the proposal.  Plaintiff argued this in its reply in support of its motion for summary judgment.  ECF No. 39 at 4.

(4:09-CV-00168)

## Conclusion

Based on the forgoing analysis and findings, the Court GRANTS in part and DENIES in part the pending motions for summary judgment.

Accordingly, the Court finds that all of Defendants' statements from the Tennessee proposal as well as the website comparison are either ambiguous or true but misleading and thus, cannot be literally false.  Therefore, because Cboss has not presented some sort of evidence demonstrating that consumers were misled to satisfy the required element of a "tendency to deceive consumers," Defendants are granted summary judgment with respect to those statements.

Further, the Court finds that the first statement from Defendants' website, Zerbonia "may well be the world's leading expert . . . ," is one of opinion and not fact and is thus not actionable under the Lanham Act.  Additionally, the second part of the first statement, that Zerbonia "has built two" systems, is either ambiguous or true but misleading.  Defendants are granted summary judgment with respect to this statement because Cboss has not presented some sort of evidence demonstrating that consumers were misled.

Further, the Court finds the last two statements from Defendants' website, that the State of Ohio contracted with Zerbonia and Zerbonia was the "System Architect" and "Project Manager" for the COIN project, are literally false under the Lanham Act, 15 U.S.C. § 1125.  Plaintiffs are granted summary judgment and thus a declaratory judgment concerning these statements.

(4:09-CV-00168)

The Court shall retain jurisdiction for a period of five (5) years from the date of this

Judgment Entry should Defendants violate the Declaratory Judgments.

Each party shall bear their own costs.

IT IS SO ORDERED.


  September 29, 2010                                                s/ *David D. Dowd, Jr.*
Date                                                               David D. Dowd, Jr.
                                                                   U.S. District Judge